# WILLIAMS v. BALDREY.

No. 5573.    Opinion Filed November 2, 1915.

(152 Pac. 814.)

1. **HIGHWAYS—Automobile Accident—Negligence—Sufficiency of Evidence.** The evidence is sufficient to sustain the verdict.

2. **DAMAGES—Exemplary Damages—Right to Recover—Torts.** To authorize a judgment for exemplary damages, in an action sounding in tort, the proof must show some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's right—as is deemed equivalent to such intent.

3. **SAME—Theory of Imposing.** Exemplary damages are imposed by the law on the theory of punishment to the offender, for the general benefit of society, and as a restraint to the transgressor, and are allowed only in cases where malice, fraud, oppression, or gross negligence enters into the cause of action.

(Syllabus by Brewer, C.)

*Error from District Court, Alfalfa County;*
*James W. Steen, Judge.*

Action by Reil Baldrey against Burley Williams. Judgment for plaintiff, and defendant brings error. Affirmed.

*Titus & Talbot,* for plaintiff in error.

*George W. Partridge,* for defendant in error.

Opinion by BREWER, C. Defendant in error, Baldrey, brought this suit, as plaintiff, against Burley Williams to recover damages for personal injuries, and for injury to a buggy and harness, part of a rig he was driving, and alleged that said injuries were occasioned by the defendant, by and through defendant's negligence in running an automobile over the buggy in which plaintiff was at the time riding. The answer admits the

collision, but denies any negligence upon the part of defendant, and sets up contributory negligence on the part of plaintiff, and also the claim of settlement. At a trial of the case, plaintiff was awarded $50 as actual, and $100 as exemplary, damages.

The only points urged on appeal and which are of sufficient importance to require the attention of the court, are:   (1) That the evidence is insufficient to sustain a verdict for actual damages; (2) that there is neither pleading nor evidence sufficient to warrant the verdict for exemplary damages; (3) error of the court in instructing the jury relative to defendant's claim of settlement.

Treating the above points in the order in which they are mentioned, we have carefully examined the evidence, and are fully convinced that there was evidence tending to show negligence upon the part of defendant, and it was not error to submit the issue to the jury. Defendant in error has summarized the evidence, we think, in a substantially accurate way, which is as follows:

"I first saw the automobile on the top of the hill. It was about 100 yards away at the time. Did not know who was driving it at the time. The top of the buggy was down, but not crushed. I looked around the side of the top, and saw the machine coming over the hill. I then made an effort to turn out and give them part of the road. All the wheels of the buggy were past the right of the road except one and that about the center. That was the wheel struck by the machine. The fender in front of the machine struck the wheel. The automobile was over 18 inches to the right of the center of the road. I was on the right side of the road. I base my judgment of the speed of the machine on machines I

have seen running, and the machine was coming about as fast as it would run. I think it was running about 30 miles an hour. I base my judgment upon having seen different things traveling. It was traveling faster than the average freight train. I glanced back, saw the automobile coming, then turned my attention to the horse, and tried to get him out of the road. It was 15 or 20 seconds from the time I saw the automobile until it struck me. It struck the left hind wheel and broke it and overturned the buggy. It did not stop when it struck, but went about 30 or 40 yards, clear off the bridge. He told me he was satisfied that he could have stopped the car before it hit; but he didn't do it. He just took off the brake and put on all the power he had, so as to hit me and go through so he would not drag me. He told me that out of his own mouth, before a good substantial citizen there, that he went through as hard as he could; he took off the brake and put on his power and went through as hard as he could. I did not see what the driver did. I did not see him touch the lever or steering wheel. I did not see him advance the stroke or turn on the gas, but I heard it. I heard the running of the engine, and could tell that very plain when it is pulling and when it ain't—when it has got power. I knew just before he struck it took more power by the sound. I knew he intentionally turned on more power for the express purpose of hitting me harder than he needed to by what he told me. That is what he said. There was plenty of room for him to have gone around me. At the time he struck me I was giving my attention to the horse and buggy. When I went out of the buggy, I fell over to the left. I was on the right side of the road and sitting on the right side of the buggy. It threw me clear off the road, and I fell behind the automobile."

Another witness, plaintiff's daughter, who was in the buggy when it was hit, says:

"Mr. Williams was driving the car. Papa was thrown clear over where I fell and past the center of the bridge. He fell behind the automobile. It was running very fast, because the automobile had struck the buggy and got past before he fell to the bridge. It ran on across the bridge to the foot of the hill on the other side, about 35 or 40 feet. He had crossed clear over the bridge before he got stopped. He came back after he got stopped. I had a conversation with him. He said the oil had got on the brakes, and that he could not stop the machine; that it was an accident."

Another witness testified:

"A person coming from the west down that road could have observed a horse and buggy in the public highway. I am well acquainted with the grade and bridge. The bridge is supposed to be 16 feet wide, 40 feet long, and 10 feet high from the bottom of the canyon. The grade approaching the bridge on the east side is about the width of the bridge, and the same on the west, and gradually gets a little wider back. The collision occurred on the west side. The grade where the collision occurred was about the width of the bridge. It was sufficient room for this automobile to have passed."

If this evidence is true—and for the purpose of our inquiry, it must be assumed to be—it seems to us that it tends to show negligence upon the part of defendant, and that he was careless of or unmindful of the rights of his fellow traveler upon the highway. Indeed, taking this evidence, together with inferences properly to be drawn therefrom, it has a tendency to prove that defendant was not only negligent, in the sense that the term is usually employed, but that he willfully and wantonly violated plaintiff's rights and the duty the law imposed upon him relative thereto.

5—52

2. Under this head it is contended that the petition is not sufficient in its averments to raise the question of exemplary damages, and therefore the necessity of instructing upon same. The petition, among other things, alleges:

" * * * The defendant, while riding in one of his automobiles, was proceeding along' said public highway as aforesaid, and traveling in the same direction as this plaintiff was traveling, and that he was running at a high rate of speed, coming up behind this plaintiff, and carelessly and negligently, willfully and with wanton disregard for the rights of the plaintiff, ran up to and against this plaintiff's said buggy from the rear and collided with said buggy."

We will not say that this is a model pleading on this question, or that it would have withstood a demurrer, but none was leveled at it; it passed unchallenged. The issue was submitted to the jury, under an instruction unobjected to; and we believe that in this situation it is sufficient as an averment to justify the introduction of proof and the submission of the question to the jury, especially when such submission is not objected to. It will be noticed that, in addition to charging that the collision was the result of carelessness and negligence, it also goes further, and charges that it occurred "willfully and with wanton disregard for the rights of the plaintiff," through the use of an automobile coming up from behind and running along the highway at a high rate of speed. But plaintiff in error points out that the statute (section 2581, Rev. Laws 1910) permits exemplary damages only where the party complained against has "been guilty of oppression, fraud or malice, actual or presumed," and that plaintiff in his petition has not used

any of the essential statutory words. This statute has come under review a number of times, and it has been held to be substantially but a reiteration of the common law on the subject. *Hobbs v. Smith et al.*, 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697. See, also, this case, page 839, and authorities cited as to sufficiency of the petition.

In a later case of *Western U. Tel. Co. v. Reeves*, 34 Okla. 468, 126 Pac. 216, Commissioner (now Justice) Sharp has gone into a lengthy discussion of the question of exemplary damages, and what conduct upon the part of a defendant will justify their assessment. He has collected many authorities thereon, which we will not again set out, and from them has arrived at and declared, as shown in the syllabus in that case, the following rule:

"To authorize a judgment for exemplary damages, in an action sounding in tort, the proof must show some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's right—as is deemed equivalent to such intent."

In *St. Louis, I. M. & S. Ry. Co. v. Freeland*, 39 Okla. 60, 134 Pac. 47, it is held:

"Exemplary damages can be awarded only in cases where the defendant is actuated by fraud or malice, or is guilty of such gross negligence as indicates a reckless disregard for the rights of others."

In *Rhyne et al. v. Turley*, 37 Okla. 159, 131 Pac. 695, the theory upon which exemplary damages are allowed is thus stated:

"Exemplary damages are imposed by the law on the theory of punishment to the offender, for the general benefit of society, and as a restraint to the transgressor, and are allowed only in cases where malice, fraud, oppression, or gross negligence enter into the cause of action."

In the light of these decisions, we believe the petition, being unchallenged in any way, was sufficient to raise the question, and we believe there was some evidence, slight though it may be, tending to prove the issue, and that therefore the court did not err in submitting the same to the jury.

3. Complaint is made that the court erred in giving a certain instruction number 12, the same dealing with the question of settlement as raised in the answer; but we have examined the evidence in this case, and have no doubt that it utterly failed to prove a settlement. There was some talk between the parties as to paying for the damage done to the buggy, which did not belong to plaintiff, and there is some evidence that defendant paid the repair bill on the buggy. But there is not the slightest evidence that there was any settlement, or any agreement whatever between the parties regarding damages to plaintiff for his physical injuries. Therefore the the court should have refused to instruct the jury on this issue. If, in doing so, the court fell into erroneous and inaccurate statements, still the instruction on the subject was more favorable to the plaintiff in error than he had a right to expect.

The other points raised in the brief are neither of sufficient importance nor merit to justify mentioning in detail.

We think defendant had a fair trial, and got off light, and that the judgment should be in all things affirmed.

By the Court:  It is so ordered.